IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JOSE JULIO DIAZ,<br><br>Defendant. | Crim. No. **19-446 PJM** |

**MEMORANDUM OPINION**

On October 16, 2019, Jose Julio Diaz pled guilty to one count of possession of child pornography pursuant to 18 U.S.C. § 2252A(a)(5)(B) & (b)(2). ECF No. 6. On January 24, 2020, the Court sentenced him to a term of 48 months of imprisonment and 10 years of supervised release. ECF No. 31. Diaz is presently designated to Federal Correctional Institution Allenwood Low in Allenwood, Pennsylvania and has a projected release date of August 8, 2023.

On February 28, 2022, Diaz filed the present *pro se* motion compassionate release. ECF No. 47 ("Motion"). On March 1, 2022, the Office of the Clerk of this Court sent a letter to Diaz, informing him that his Motion had been received and that the Office of the Federal Public Defender for the District of Maryland would review his case. ECF No. 48. On April 8, 2022, the Office of Federal Public Defender in Maryland declined to represent Cephas. ECF No. 49. The Court then directed the Government to respond to Diaz's Motion, ECF No. 50. On May 6, 2022, Diaz filed an "addendum" to his Motion. ECF No. 53. On May 26, 2022, the Government responded in opposition to the Motion, ECF No. 56, and on July 1, 2022, Diaz replied, ECF No. 62. No hearing is necessary to resolve the Motion. For the reasons that follow, Diaz's Motion is **DENIED**.

1

**I.**

Diaz seeks compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), which requires him to demonstrate "extraordinary and compelling reasons" to justify the request. Diaz submits that his health conditions, obesity and high blood pressure, put him at greater risk of serious illness from COVID-19, which is a sufficient reason to warrant relief. ECF No. 47 at 1. The Government urges the Court to deny Diaz's Motion because his health conditions do not meet the "extraordinary and compelling" criteria for a relief and because other factors warranting relief are absent. *See* ECF No. 56.

Ordinarily, a court may not modify a term of imprisonment once it has been imposed. 18 U.S.C. § 3582(c) (2018). One exception to the is general rule is the provision for compassionate release, which allows the BOP to seek a modification of a prisoner's sentence from the court. *Id.* § 3582(c)(1)(A). The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018), modified the compassionate release provision to allow prisoners to seek a sentence reduction directly from the court. This modification permits a court to modify a term of imprisonment if: (1) the petitioner has fully exhausted all administrative remedies or 30 days have passed since the BOP received the request;[1] (2) "extraordinary and compelling reasons" warrant relief; and (3) the sentencing factors set forth in 18 U.S.C. § 3553(a) also support granting relief. 18 U.S.C. § 3582(c)(1)(A).

**A. Extraordinary and Compelling Reasons**

In the Fourth Circuit, district courts are "empowered . . . to consider any extraordinary and compelling reason for release." *United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020). Diaz submits that two extraordinary and compelling reasons for his release exist: (1) his underlying

---

[1] Diaz filed a request for compassionate release with the Warden at his facility on June 11, 2020, which was denied on June 25, 2020. Accordingly, the Court finds that he has satisfied the exhaustion requirement.

2

health conditions which heighten his risk and vulnerability for severe illness from COVID-19; and (2) hardship conditions that have increased the severity of his term of imprisonment that were not considered at the time of his sentencing. ECF No. 47 at 1. According to Diaz, although he is fully vaccinated, he is particularly susceptible to risk of death from COVID-19 because he is obese and has Stage II (Essential) Hypertension. *Id.* at 3. He points out that the CDC has indicated that obese and overweight individuals are at increased risk of serious consequences from COVID-19. *Id.* Furthermore, Diaz claims that FCI Allenwood Low has particularized facility risk. *Id.* at 4. He says that the facility has demonstrated an inability to mitigate the virus and that inmates are in close proximity. *Id.*

In response, the Government concedes that Diaz's continued obesity is a medical condition that, in the right context, could establish extraordinary reasons for early release or sentence reduction. ECF No. 56 at 2. Nonetheless, the Government explains that the interest in this case is not compelling, especially since Diaz is vaccinated against COVID-19. *Id.*

The World Health Organization declared COVID-19 a global pandemic on March 11, 2020. *See Seth v. McDonough*, 461 F. Supp. 3d 242, 247 (D. Md. 2020). The judges of this Court "have written extensively about the pandemic." *United States v. Williams*, PWG-19-134, 2020 WL 3073320, at *1 (D. Md. June 10, 2020) (collecting cases). Therefore, it is not necessary to recount in detail the "unprecedented nature and impact" of the pandemic. *Id.*

The Centers for Disease Control and Prevention ("CDC") has identified certain risk factors that may increase the chance of severe illness due to COVID-19. "According to the CDC, the factors that increase the risk include cancer; chronic kidney disease; chronic liver disease; chronic lung diseases, including COPD, asthma (moderate to severe), interstitial lung disease, cystic fibrosis, and pulmonary hypertension; dementia or other neurological conditions; diabetes (Type

3

1 and Type 2); disabilities, such as Down syndrome; heart conditions, such as heart failure, coronary artery disease, cardiomyopathies, and hypertension; HIV; being immunocompromised; liver disease; obesity, where the body mass index ('BMI') is 25 or higher; physical inactivity; pregnancy; sickle cell disease; smoking; solid organ or blood stem cell transplant; stroke or cerebrovascular disease; mental health conditions; substance use disorders; and tuberculosis." *United States v. Wright*, No. CR ELH-08-381, 2022 WL 2104489, at *9 (D. Md. June 10, 2022) (internal citation omitted).

The Fourth Circuit has recognized that "COVID-19 raises medical issues in the prison context that are particularly serious — it is highly communicable; it is aggravated by certain other medical conditions; and it can be lethal." *United States v. High*, 997 F.3d 181, 185 (4th Cir. 2021). Throughout the pandemic, the standard of extraordinary and compelling reasons has been met where a prisoner has medical conditions that place them at high risk of becoming seriously ill or dying if they contract the disease. *See, e.g., United States v. Ogundele*, No. 8:15-cr-277-PWG-1, 2021 WL 1541660, at *4 (D. Md. Apr. 20, 2021) (diabetes and hypertension, in the context of the COVID-19 pandemic, constitute extraordinary and compelling reasons for release); *United States v. Benson*, No. 09-CR-0240-PWG, 2020 WL 7239983, at * (D. Md. Dec. 9, 2020) (same, with respect to hypertension coupled with COVID-19 infection).

The Court has little trouble concluding that Diaz's health conditions are of the type that put a person at greater risk should they contract COVID-19, and thus, could constitute extraordinary and compelling reasons for release. However, Diaz's vaccination status should factor into the analysis.

As the Government points out, many courts have determined that, FDA-approved vaccinations render certain underlying health conditions no longer so risky as to constituted

extraordinary and compelling reasons for release. *See United States v. Johnson*, No. 4:19-cr-00579-DCC-1, 2021 WL 1791499 at *2 (D. S.C. May 5, 2021) (petitioner with Type II diabetes, hypertension, and obesity, who had received vaccine did not present extraordinary and compelling reasons for release). *See also* United States v. McGill, 2021 WL 662182, at *5 (D. Md. Feb. 19, 2021) (Gallagher, J.) (petitioner with "several significant medical conditions," who had received vaccine did not present extraordinary and compelling reasons for release).

On the other hand, the fact of prior vaccination may not eliminate concerns about underlying health conditions which create a greater risk of serious illness from COVID-19, especially with the emergency of new COVID-19 variants. Judge Hollander of this Court has explained:

> The COVID-19 vaccines have been useful in reducing the health risks posed by the coronavirus. But, they are not entirely effective, particularly as to the latest variants. "The variants have shown a remarkable ability to get around the protection offered by infection and vaccination." Carla K. Johnson, *Experts decry little action as COVID-19 cases surge*, BALT. SUN (July 14, 2022). Albeit in rare cases, vaccinated individuals have died due to COVID-19. *See Rates of COVID-19 Cases and Death by Vaccination Status*, CTRS FOR DISEASE CONTROL AND PREVENTION, https://covid.cdc.gov/covid-data-tracker/#rates-by-vaccine-status (last updated Apr. 4, 2022). Therefore, the fact of vaccination or prior infection does not eliminate concerns about underlying health conditions that might otherwise render an individual eligible for compassionate release. *See United States v. Palmer*, PWG-13-623, 2021 WL 3212586, at *3 (D. Md. July 29, 2021) ("It is impossible to predict the impact of the vaccines on future strains of the virus, just as it is impossible to predict the impact of COVID-19 on [defendant's] specifical medical issues."); *Spriggs*, 2021 WL 1856667, at *3 (inmate having received vaccine "does not negate that his underlying health conditions make him eligible for compassionate release.").

*United States v. Spence*, No. CR ELH-18-0219, 2022 WL 2789095, at *16 (D. Md. July 15, 2022). Several judges of this Court have found that, in light of the everchanging nature of the COVID-19 pandemic, an inmate may be eligible for compassionate release, notwithstanding his vaccination status. *See, e.g., United States v. Williams*, ELH 17-0632, 2022 WL 1241394, at

5

*12–13 (D. Md. Apr. 27, 2022) (determining that obesity presented extraordinary and compelling reason for release, in light of COVID-19, despite vaccination status), United *States v. Hegie*, RDB-14-411, 2022 WL 605383, at *2 (D. Md. Mar. 1, 2022) (determining that obesity and asthma presented extraordinary and compelling reason for release, in light of COVID-19, despite vaccination status); *United States v. Coleman*, PWG-17-393, WL 356724, at *3 (D. Md. Feb. 7, 2022) (determining that, given the changing circumstances presented by the COVID-19 pandemic and the absence of any information concerning the inmate's vaccination status, defendant's underlying medical conditions qualified as an extraordinary and compelling reason for his release).

Given the emergence of new variants, the fact that Diaz is vaccinated may provide less protection than the Government argues. Nonetheless, the Court also considers the risks at Diaz's particular incarceration facility: FCI Allenwood Low. See *United States v. Taylor*, No. 17-cr-0268-PWG, 2020 WL 6322620, at *3 (D. Md. Oct. 28, 2020), appeal dismissed, No. 20-7632, 2021 WL 1784092 (4th Cir. Jan. 13, 2021) (finding that hypertension and high BMI were not sufficient to warrant prisoner's release when the spread of coronavirus in his BOP facility was under control, and prisoner did not show that he would not receive appropriate treatment at his BOP facility or a nearby medical facility if he were to contract the virus). The Government submits that a significant portion of FCI Allenwood Low's population has been fully inolciated against COVID-19. Currently, BOP reports zero inmates and one staff member with confirmed active cases. COVID-19 Operations, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last accessed July 22, 2022).

Thus, while Diaz faces health problems which could pose a risk should he be infected with COVID-19, he is protected from both infection and serious symptoms having being vaccinated against the virus, as well as the fact that the vaccination rate at FCI Allenwood Low is high. In

6

other words, his health conditions, combined with the risk of contracting COVID-19, do not amount to an extraordinary and compelling circumstance for release.

### B. Sentencing Factors

Even assuming that Diaz has demonstrated extraordinary and compelling circumstances by virtue of his obesity, hypertension, and increased risk of severe illness from COVID-19 (despite his vaccination status), the sentencing factors set forth in 18 U.S.C. § 3553(a) weigh against granting relief. The § 3553(a) factors are: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) "the need for the sentence imposed;" (3) "the kinds of sentences available;" (4) the sentencing guideline ranges; (5) "any pertinent policy statement;" (6) "the need to avoid unwarranted sentence disparities among defendants with similar records;" and (7) "the need to provide restitution to the victims of the offense."

Even if Diaz met the high burden for compassionate release, the § 3553(a) factors weigh against granting release. Diaz points out that he is a non-violent offender. ECF No. 47 at 7. Further, he claims that that non-production child pornography offenders have low recidivism rates. *Id.* In addition, he submits that serving over half of his statutory term of imprisonment is sufficient to serve the need for just punishment and deterrence. *Id.* at 8.

Diaz's child pornography offense was troubling. Although his offense was not physically violent, it was far from a victimless crime. Indeed, physical violence is not the sole measure of gravity of criminal conduct. The Government points out the sheer amount of child pornography Diaz had in his collection—over 20,000 images and enough videos for 79 hours of playback—as well as the prevalence of images of infants and toddlers. ECF No. 58. Furthermore, the Government has explained the devastating impact of Diaz's crime on his victims. *Id.* Against this backdrop, Diaz's statements suggest that he does not appreciate the gravity of his conduct.

7

Notably, Diaz moved for compassionate release after serving just over 50% of the sentence the Court initially imposed. At sentencing, the Court imposed a sentence that was 30 months below the sentencing range contemplated by the Guidelines. ECF Nos. 15, 22, 31. Indeed, the Court has already considered Diaz's status as a non-violent offender. Thus, the term of incarceration that Diaz has severed to date does not adequately correspond to the seriousness of the conduct that led to his imprisonment.

It is undeniable that Diaz was possessed a large amount of child pornography, a crime that had a significantly traumatic impact on his victims. At this juncture, a balancing of the sentencing factors outlined in 18 U.S.C. § 3553(a) leads the Court to conclude that Diaz's release is not warranted at this time.

## II.

For the foregoing reasons, Diaz's Motion for Compassionate Release, ECF No. 47, is **DENIED**.

A separate Order will **ISSUE**.

Date: July 26, 2022

PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

8